```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOE BOYD,JR.,
                          Plaintiff,           06-CV-6122T

v.                                              DECISION
                                                and ORDER
JOANNE B.BARNHART,
Commissioner of Social Security,

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff, Joe Boyd ("Boyd") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On July 21, 2006, plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On October 5, 2006, the Commissioner cross-moved for judgment on the pleadings.

For the reasons that follow, I find that the Commissioner's decision is supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Boyd first applied for disability benefits on May 6, 2003 claiming that he was disabled because of seizures and depression. (Tr. 81-83, 89-98) Plaintiff appealed this decision and requested

a hearing. (Tr. 76)  Following a hearing held on February 23, 2005 during which plaintiff testified, was represented by counsel and a vocational expert testified, the ALJ found in his decision dated March 10, 2005, that plaintiff was not disabled.  (Tr. 255-285, 61-69) The Appeals Council denied plaintiff's request for review on January 12, 2006, and the ALJ's decision became final.  Plaintiff commenced this action on February 27, 2006.(Tr. 3-5)

## DISCUSSION

Boyd is a 59 year old male with a high school education. (Tr. 222, 260)  His past work history includes working as a cell tower technician and a telephone cable technician for 14 years after serving as a telecommunications specialist in the military for twenty years. (Tr. 91)  Plaintiff's medical difficulties include depression and seizures which he claimed began December 15, 2000 and made him incapable of working April 28, 2003. (Tr. 90)

Boyd experienced his first seizure on December 15, 2000 when he woke his wife at 2:00 in the morning by making unusual noises, contorting his face and having generalized slow, tonic shaking of his upper torso. (Tr. 133)  He was confused and unable to recognize his wife after the ten minute seizure and was taken to Rochester General Hospital. (Tr. 133) He was prescribed Dilantin and felt well again after two days.

In July, 2001, plaintiff was treated by Dr. Sara Espinoza for treatment of the seizure disorder.  Although Boyd had not had a

seizure since his single episode six months earlier, he was continuing to take Dilantin.  An MRI taken on June 14, 2001 was "completely normal". (Tr. 135)

On July 9, 2001, Plaintiff began psychiatric treatment from Susan Hauptfleisch, a nurse practitioner at the V.A. Medical Center in Canandaigua, New York. (Tr. 147-154)  He was diagnosed with "major depression" with sleep disturbance and irritability. (Tr. 147)  Boyd was prescribed Mirtazapine for depression, anxiety and insomnia. (Tr. 152)  Ms. Hauptfleisch opined that plaintiff was moderately limited in his abilities in the areas of understanding and memory, sustained concentration and persistence, and adaption. (Tr. 150)  However, she only found him to be mildly limited in his social interactions. (Tr. 151)

Dr. Thomas Wong, an internist, began treating plaintiff on May 21, 2001. (Tr. 155, 168)  Dr. Wong diagnosed plaintiff with a seizure disorder that had a "stable, good prognosis" (Tr. 155) and later with depression. (Tr. 168)  Boyd reportedly told Dr. Wong that he was seeking disability payment because he could not maintain a job with the seizure disorder. (Tr. 217)  Dr. Wong reported that Boyd had three seizures during the year 2003. (Tr. 169)  Boyd noted problems with memory and concentration which he attributed to Dilantin. (Tr. 222)  Dr. Wong opined that Boyd could not work at heights, with machines, nor operate a motor

vehicle. (Tr. 158)  Dr. Wong estimated that plaintiff would need to miss work about once a month due to his condition. (Tr. 159)

Dr. Richard Beresford, a neurologist, prescribed phenytoin to control the seizure disorder. (Tr. 236)  Although Ms. Hauptfleisch had not seen plaintiff for two years, Boyd returned for treatment on October 14, 2003. (Tr. 216)  She started plaintiff on mirtaapine for depression, anxiety, and sleep. (Tr. 218)

Dr. Gary Warner conducted a neuropsychiatric consultative evaluation of plaintiff in June 2004. (Tr. 162-167) There was no evidence of psychotic symptoms or behavioral abnormalities. Plaintiff scored 86 on the verbal IQ Wechsler Adult Intelligence Scale, a performance IQ score of 80 and a full scale IQ of 82. (Tr. 164)  Dr. Warner described plaintiff's impairments in working memory, perceptual organization and processing speed as borderline to mild impairments. (Tr. 165)

On December 13, 2004, Boyd was treated by Dr. Gary Warner at the Behavioral Health Outpatient program at the V.A. Medical Center for confusional episodes. (Tr. 190) Plaintiff complained that he was having some periods of mild confusion over the prior five months. (Tr. 190)  Plaintiff was found to be mildly depressed but had not had any seizures since the prior year. (Tr. 190)  Boyd was referred to a community support group for epilepsy.  Dr. Warner again saw plaintiff on December 17, 2004 at which time he diagnosed plaintiff with major depression and seizure disorder. (Tr. 192)

Dr. Beresford's notes indicate that on February 3, 2005, plaintiff reported that he had near daily episodes of "altered awareness, agitation and pounding feeling in head." (Tr. 227) Dr. Beresford assessed that Boyd had epilepsy which was stabilized and controllable through anticonvulsant medication. (Tr. 227) He continued plaintiff on phenytoin.

Dr. Donald Banzhaf, a psychiatrist, continued plaintiff's prescription for Mirtaapine on August 17, 2005. (Tr. 202) Boyd declined Dr. Banzhaf's referral for vocational rehabilitation services. (Tr. 203)  On September 1, 2005 plaintiff reported to Dr. Beresford that he was having hallucinations and paranoid delusions. (Tr. 201)  A recent EEG was normal but neuropsychology testing in 2004 showed "some variability in performance". (Tr. 201)  Dr. Beresford found that plaintiff's seizure disorder was stable and cognitive impairment was stable and continued plaintiff on Dilantin. (Tr. 205)

Dr. Banzhaf prescribed Risperdal on September 21, 2005 in response to a seizure plaintiff experienced on September 18, 2005. (Tr. 208) Boyd was admitted to the emergency department at Strong Memorial Hospital on September 22, 2005 after some confusion and hallucinations after a seizure that occurred three days before. (Tr. 9)  Boyd was prescribed quetiapine. (Tr. 10, 14) Dr. Banzhaf again examined Boyd on November 18, 2005 and directed evaluation of the levels of phenytoin and carbamazepine. (Tr. 10)

Vocational expert, Mindy Lubeck, testified at the hearing. She was presented with the hypothetical of an older individual with a 12th grade education, status post epileptic seizures with some cognitive or memory impairment who would need to avoid heights and moving machinery and ladders. (Tr. 279) Ms. Lubeck testified that this individual could perform such jobs as housekeeping cleaners, hand packers and counter attendant. (Tr. 280)

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual's physical or mental impairment is not

disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to follow the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful

6

activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

The ALJ found that plaintiff 1) had not engaged in substantial gainful activity since the date of disability, April 28, 2005; (2) that plaintiff had impairments that were severe; (3) that plaintiff did not have an impairment that met or medically equaled the listed impairments in Appendix 1, subpart P, Regulation No. 4; (4) that plaintiff could no longer perform any of his past relevant work; and that (5) plaintiff had the residual functional capacity to perform a significant range of light to medium exertional level. (Tr. 61-69)

The ALJ based his conclusions as to plaintiff's residual functional capacity on both the medical records as well as the

vocational expert's testimony.  Plaintiff's age, education, and residual functional capacity were viewed in conjunction with the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations which directed a finding that plaintiff would be capable of a significant range of light and medium work. (Tr. 67) Because the ALJ found that plaintiff had nonexertional limitations which precluded him from performing the full range of light or medium work, the ALJ did not rely exclusively on the grids.  The vocational expert testified as to the number and types of jobs that Boyd could perform given his limitations.

There is substantial evidence to support the ALJ's conclusion that plaintiff could perform a substantial range of light and medium work.  Medical records from plaintiff's own treating physicians are consistent with this finding. Plaintiff had not had a seizure since 2003 when he admittedly was not taking his prescribed medication regularly. (Tr. 269)  Since that time, the record shows that plaintiff was taking his medications regularly and he had not experienced further seizures.  Medical records consistently show that plaintiff's condition was stable. Dr. Wong did pose restrictions on plaintiff's activities which were fully accounted for by the ALJ when positing the hypothetical to the vocational expert.  Further, plaintiff's own testimony confirmed that Boyd was able to conduct daily activities including housework and some cooking. (Tr. 217, 266)

CONCLUSION

This Court finds that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the Complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

                              S/Michael A. Telesca
                              _____
                                  MICHAEL A. TELESCA
                             United States District Judge

DATED:    Rochester, New York
            December 14, 2006